## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBIN E. WALLACE,

        Plaintiff,

    v.

ALLIEDBARTON SECURITY SERVICES,
LLC

        Defendant.

Civil Action No. 14-203 (CKK)

## MEMORANDUM OPINION
(June 1, 2015)

    Plaintiff Robin E. Wallace filed suit on February 12, 2014, against her employer Defendant AlliedBarton Security Services, LLC, alleging discrimination and retaliation on the basis of race, gender, and protected activity in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  Defendant filed an Answer and the Court issued a Scheduling Order setting May 8, 2014, as the date by which Plaintiff was required to file any amended pleadings and August 8, 2014, as the date for completing discovery.  The parties subsequently filed two joint motions for extension of time to complete discovery which the Court granted, extending the deadline for completing discovery to October 10, 2014.  *See* ECF Nos. [19] & [21].  Two months after the completion of discovery and seven months after the deadline for amending pleadings, Plaintiff filed a Motion for Leave to File First Amended Complaint.  *See* ECF No [28].  Defendant filed an Opposition to Plaintiff's Motion, ECF No. [29], and Plaintiff filed a Reply, ECF No. [30].  As Plaintiff raised several new arguments in her Reply, the Court ordered Defendant to file a sur-reply, ECF No. [34], addressing several specific issues.  Having received all of the parties' briefing, Plaintiff's Motion is now ripe for review.

1

# I.    LEGAL STANDARD

Plaintiff moves for leave to file an Amended Complaint pursuant to Federal Rule of Civil Procedure 15, which provides that leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a).  However, since Plaintiff sought to amend her Complaint seven months after the Court-ordered deadline for filing amended pleadings, the more stringent Rule 16 "good cause" standard governs the Court's evaluation of Plaintiff's Motion.  *See* Fed. R. Civ. P. 16(b); *Lurie v. Mid–Atlantic Permanente Medical Grp., P.C.,* 589 F.Supp.2d 21, 23 (D.D.C. 2008) (relying on decisions from numerous circuit courts holding that Rule 16 applies to motions for leave to amend a pleading after a scheduling order deadline has passed); *Robinson v. The Detroit News, Inc.,* 211 F. Supp.2d 101, 114 (D.D.C. 2002) ("Because the plaintiff filed her proposed motion to amend after the date specified in the court's order, the court applies the more rigorous for 'good cause' Rule 16 standard to the plaintiff's amendment."). "To hold otherwise would allow Rule 16's standards to be 'short circuited' by those of Rule 15 and would allow for parties to disregard scheduling orders, which would 'undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.' " *Lurie*, 589 F.Supp.2d at 23 (quoting *Leary v. Daeschner,* 349 F.3d 888, 906 (6th Cir. 2003)).  To show "good cause" under Federal Rule of Civil Procedure 16, "the moving party must show both diligence and a lack of prejudice to the opposing parties." *In re Papst Licensing GmbH & Co. KG Litigation*, 762 F.Supp.2d 56, 59 (D.D.C. 2011); *see also Robinson,* 211 F.Supp.2d at 114 (motion to amend denied due to undue delay); *Leary,* 349 F.3d at 906 (to determine whether good cause has been shown, a court must consider the issue of prejudice); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) ("This standard 'primarily considers the diligence of the party

seeking the amendment.' " (quoting *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607–09 (9th Cir. 1992))).

## II.    DISCUSSION

In her original Complaint, Plaintiff brought four causes of action: race and sex discrimination in violation of Title VII (Count I) and 42 U.S.C. § 1981 (Count III), and retaliation in violation of Title VII (Count II) and § 1981 (Count IV).  Plaintiff's race and sex discrimination claims arose out of Plaintiff's alleged demotion from her District Manager position in April 2013. Plaintiff's retaliation claims arose out of the hostile work environment Plaintiff alleges she and her spouse were subjected to following Plaintiff's complaint to Defendant in May 2013 that "her rights under the Civil Rights Act had been violated."  Compl. ¶ 15.

Plaintiff now seeks to amend her Complaint to include additional claims of racial discrimination and retaliation under § 1981 and racial and gender discrimination, as well as retaliation, under the District of Columbia Human Rights Act ("DCHRA") for defendant's failure to promote her to the position of District Manager for the Northern Virginia Region in April 2014 and for her spouse's termination on October 31, 2014, and her own termination on November 17, 2014.  The Court will evaluate each new claim in turn to determine whether there is good cause to allow Plaintiff leave to amend her Complaint to include the claim.

### a.   April 2014 Non-Promotion

Plaintiff seeks to amend her Complaint to include an additional claim of race and sex discrimination based on her non-selection for the position of District Manager for the Northern Virginia Region in 2014.  While it is not precisely clear on what date Plaintiff learned that she had not been selected for the District Manager position, it is clear that Plaintiff was aware of her non-selection at least seven months before seeking to amend her Complaint and potentially before the

deadline for amending pleadings. On April 16, 2014, Plaintiff received an email stating that she was not selected for the District Manager position, however, Defendant explains in its Sur-Reply that the email was sent to all applicants in error.  Def.'s Sur-Reply, at 2; *see also* Pl.'s Reply, at 3 (explaining that after receiving the email, "Defendant assured Ms. Wallace that her candidacy was still under consideration . . . .").  Shortly after April 16, Plaintiff had an initial interview for the District Manager position and was invited to return for a panel interview which was tentatively scheduled for May 8, 2014.  Def.'s Sur-Reply, at 2.  Plaintiff's panel interview never took place, however, because prior to that date Defendant decided not to fill the position.  *Id.*  Defendant claims that it informed Plaintiff that she had not been selected for the position "on or before May 8, 2014," *id.*, but Plaintiff contends that as of May 8, 2014, the day amended pleadings were due, she still believed she was a candidate for the District Manager position, Pl.'s Reply, at 3.  In either event, the Court finds that Plaintiff would have made an inquiry about her panel interview and application, especially if the interview was tentatively scheduled for May 8, 2014, sometime in the month of May and thereby learned that Defendant was no longer hiring for the District Manager position.  Indeed, Plaintiff had already filed the present lawsuit at the point she was interviewing for the District Manager position and thus would have been aware that such hiring decisions should be diligently evaluated due to their potential connection to the pending lawsuit.  Accordingly, Plaintiff's decision to wait seven months before filing an Amended Complaint to include this non-promotion as a basis for her discrimination claims constitutes an undue delay.  *Robinson*, 211 F.Supp.2d at 114 (striking plaintiff's amendment "filed eight months after the date specified in the scheduling order because of undue delay"); *Lurie*, 589 F.Supp.2d at 24 ("The plaintiff's inadequate explanation, combined with the fact that the motion for leave to file an amended complaint was filed almost a year after the Court's deadline, two years after the defendant's answer, and two

weeks after the close of discovery, leads the Court to conclude that the plaintiff cannot amend his complaint under the Rule 16(b) "good cause" standard.").

Plaintiff appears to argue that her delay was justified because she did not learn of the potential discriminatory nature, and thus relevance, of her non-promotion to her discrimination case until depositions were conducted in October 2014. Pl.'s Reply, at 4. However, the excerpt from Plaintiff's deposition that Plaintiff attaches to her Reply belies this contention. The excerpt comes from a deposition of Plaintiff conducted in mid-August 2014 and shows that, as of that date, at least, Plaintiff was aware of her non-promotion and already considering it to be a discriminatory act. Nevertheless, Plaintiff waited at least four months before amending her Complaint to include this non-promotion as a basis for her discrimination claim. Even accepting the version of the facts presented in Plaintiff's briefing, Plaintiff still waited two months—and two months following the close of discovery—to amend her Complaint. Although Plaintiff had previously sought to extend the discovery deadline, Plaintiff did not seek to extend the deadline after allegedly learning of the discriminatory nature of her non-promotion in October. Accordingly, the Court still finds that Plaintiff was not diligent in seeking to amend her Complaint to add this claim. *See Monolithic Power Sys., Inc. v. 02 Micro Internat'l Ltd.,* Civ. No. 08–4567, 2009 WL 3353306, *2 (N.D.Cal. Oct. 16, 2009) (finding that 02 Micro was not diligent because it had the new relevant information three months before it filed its motion to amend its infringement contentions).

Plaintiff also argues that Defendant would not be prejudiced by the addition of this non-promotion claim because "[t]he parties have conducted extensive discovery on the issues surrounding her failure to promote claim during the discovery period, and . . . no additional discovery will be necessary for that claim." Pl.'s Mot. at 4. Plaintiff explains that the parties' discovery "included issues related to the non-promotion on plaintiff's theory that discovery on the

non-promotion was potentially relevant to the issue of credibility, bias and pretext, as opposed to a discrete issue of discrimination."  Pl.'s Reply, at 3.  Plaintiff further claims that Defendant "had a full and fair opportunity to depose Ms. Wallace in August 2014 on the non-promotion" when Plaintiff suggested the non-promotion was motivated by discrimination in her deposition.  *Id.* However, Defendant did not conduct depositions with the knowledge that this non-promotion would be an independent claim worthy of fully fleshing out the facts surrounding the non-promotion.  Plaintiff's brief reference to the 2014 non-promotion was insufficient to put Defendant on notice that substantial discovery should be conducted relating to the non-promotion.  Plaintiff also notes that she requested and received from Defendant documents related to the District Manager vacancy in Virginia.  *Id.*  But again, this does not show that *Defendant* requested any such discovery or was on notice that any such discovery would be relevant to its defense of this case.  Defendant also explains in its Sur-Reply that Plaintiff never provided it with any discovery related to the 2014 non-promotion.  Def.'s Sur-Reply, at 4.  As Plaintiff's newly proposed non-promotion claim would require additional discovery in order for Defendant to properly prepare its defense, the Court finds that Defendant is prejudiced by Plaintiff's delay in amending her Complaint to include this claim.  *See Coleman*, 232 F.3d at 1295 (denying motion to amend complaint in part because "the request to amend the complaint would likely have required reopening discovery so that [defendant] could develop its evidence to prepare its defenses to this theory").

### b.  October and November 2014 Terminations

Plaintiff next seeks to amend her Complaint to include discrimination and retaliation claims based on her termination in mid-November 2014 and her spouse's termination in late October 2014.  Plaintiff argues that she has not unduly delayed seeking to add these claims because the

terminations were imposed in late October and mid-November 2014 after the close of discovery, and Plaintiff "moved swiftly" to amend her complaint in December 2014 based on these events. Pl.'s Mot., at 4.  Nevertheless, Plaintiff acknowledges that the addition of these claims "will require additional discovery into the events leading to her and her spouse's termination." *Id.*  Although Plaintiff acted relatively promptly to amend her Complaint to include these termination claims, the Court finds that Plaintiff cannot show that Defendant will not be prejudiced by this amendment and, thus, cannot establish "good cause" to amend the Complaint.  Plaintiff acknowledges that amending the Complaint to include these termination claims would require the parties to reopen discovery, which had already been closed for two months at the time Plaintiff filed her Motion to amend the Complaint.  As the termination claims constitute entirely new claims based on entirely new facts, Defendant would need to conduct depositions of new witnesses and new depositions of old witnesses, produce new interrogatories and requests for documentation, and research new comparator information.  Def.'s Opp'n, at 10-11.  This entirely new discovery will delay the adjudication of the claims in Plaintiff's current Complaint.

Plaintiff contends that Defendant's protest of prejudice is made in bad faith because Defendant filed a civil claim in the Eastern District of Virginia shortly after the filing of Plaintiff's Motion for Leave to File First Amended Complaint and that civil claim is based on Plaintiff's and Plaintiff's spouse's termination.  Pl.'s Reply, at 5.  Plaintiff argues that this civil litigation will already subject Defendant to the discovery and litigation costs that it is seeking to avoid in opposing Plaintiff's Motion to amend the Complaint.  The Court asked Defendant to address the impact of this civil litigation on discovery in this matter in its Sur-Reply.  In its Sur-Reply, Defendant explained that the lawsuit in the Eastern District of Virginia was dismissed without prejudice and the parties did not respond to any discovery.  Def.'s Sur-Reply, at 5.  As a result,

Defendant explains, none of the additional discovery costs that Defendant argued it would have to incur if Plaintiff were allowed to amend her Complaint were reduced by the lawsuit filed by Defendant in the Eastern District of Virginia.  Accordingly, the Court finds that Plaintiff has not shown that there is "good cause" to amend her Complaint to include these additional termination claims.  *See In re Papst Licensing GmbH & Co. KG Litigation*, 762 F.Supp.2d at 59 (explaining that to show "good cause" under Federal Rule of Civil Procedure 16, "the moving party must show both diligence and a *lack of prejudice* to the opposing parties." (emphasis added)).  As Plaintiff could bring these new termination claims in an entirely new case, the Court shall DENY WITHOUT PREJUDICE Plaintiff's Motion for Leave to File First Amended Complaint to include these claims.

### c.   District of Columbia Human Rights Act Claims

Finally, Plaintiff seeks to amend her Complaint to include the DCHRA as a source of relief for all of her claims.  Plaintiff does not provide any indication in her briefing as to why she did not bring her claims under the DCHRA originally.  The Court sees no reason why Plaintiff could not have initially brought her claims under the DCHRA.  Moreover, Plaintiff provides no explanation as to why she is now seeking to amend her Complaint to include a DCHRA cause of action—seven months after the Court's deadline for filing amended pleadings and two months after the close of discovery.  Without any explanation for why Plaintiff is seeking to add DCHRA claims and at this late stage, the Court concludes that Plaintiff cannot amend her Complaint under the Rule 16(b) "good cause" standard.[1]  *See Lurie*, 589 F.Supp.2d at 24 ("The plaintiff's *inadequate explanation*,

---

[1] Defendant contends that it will be prejudiced by the addition of DCHRA claims and exposed to more expansive damages because the DCHRA has no cap on damages.  Def.'s Opp'n, at 12.  However, Plaintiff's Complaint already includes claims under 42 U.S.C. § 1981, which also has no damages cap.  *See* 42 U.S.C. § 1981a(b).  Thus, Defendant was already on notice that it was defending against a claim with no damages cap.  Nevertheless, it is unclear to the Court why

combined with the fact that the motion for leave to file an amended complaint was filed almost a year after the Court's deadline, two years after the defendant's answer, and two weeks after the close of discovery, leads the Court to conclude that the plaintiff cannot amend his complaint under the Rule 16(b) "good cause" standard." (emphasis added)).

### III.   CONCLUSION

For the foregoing reasons, the Court holds that Plaintiff has failed to show that there is "good cause" under Federal Rule of Civil Procedure 16(b) to amend her Complaint to include any of the additional claims discussed above.   Accordingly, Plaintiff's Motion for Leave to File First Amended Complaint is DENIED.   An appropriate Order accompanies this Memorandum Opinion.


_____
                    /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

Plaintiff is now seeking to amend her Complaint to include DCHRA claims because the elements of a DCHRA and a § 1981 claim are also the same.  *See Lemmons v. Georgetown University Hosp.*, 431 F.Supp.2d 76, 86 (D.D.C. 2006); *Hunter v. Ark Restaurants Corp.*, 3 F.Supp.2d 9, 20 n.8 (D.D.C. 1998).